May it please the Court, I'm Spencer Hall representing the Weinstein & Riley Law Firm for purposes of this oral argument. And I would like to reserve a few minutes for rebuttal. I'll try and help you Mr. Hall. Thank you very much. Okay. I will of course respond to any questions the Court has, but the issue I would like to focus on here, if left to my own devices, is the issue of settlement. I think that is the simplest issue to see where error was committed. I think in some ways it is the most important issue here, although there are numerous issues relating to the Fair Debt Collection Practices Act. Counsel, I've seen this language a thousand times in settlement agreements. I've never, ever heard of it being applied to encompass a co-defendant in a case. I mean, that's your position, right? That this boilerplate release of Wells Fargo by the Strassers in paragraph 2 encompass a co-defendant who was not made party to the settlement agreement? That's correct, Your Honor. I'd love to hear, I'd love to be persuaded why that's correct. As I said, I've never seen that language interpreted to encompass a co-defendant who's not made an explicit party to the agreement. And if I could follow up on that. You know, Chief Judge Kaczynski has criticized the flexibility, to put it mildly, of the California Parole Evidence Rule, which seems to be very, very similar to the Washington Rule. I mean, to, I obviously understand the logic of your position of the word attorneys is there, the firm is attorneys, the end, you know, QED. But unless Washington has an incredibly, incredibly strict view of parole evidence, it does not seem to be a tenable view. Because, in fact, if there's ambiguity, it can come in and it goes to the jury and the jury decides it. And that's what happened here. So what is it about, you know, what is it about Washington's Parole Evidence Rule that would take it away, as Judge Wofford just said, from this out of, you know, this boilerplate that all of us have seen many times and has never occurred to anyone to put on the somewhat peculiar construction that you are urging on that boilerplate? Okay. You can take either of the questions in any order or both together. All right. I kind of think they're the same question in a way. Which is why I wanted to put it to you. Right. So just let me muddle through and then, because I hear what you're saying. I think the language here is language that we've all used a hundred times in the practice. And one of the reasons I wanted to address this is I think the briefing kind of did a disservice to the way the language was quoted from the agreement. Because in the briefing, it said that who was being released was Wells Fargo and its attorneys. And then it went on to say there's another paragraph in the settlement agreement that says the attorneys for purposes of reviewing the settlement agreement with the case were the defense counsel at the time. And so the plaintiff's argument was that that meant that only referred to those attorneys. But I would ask the court to look at the settlement agreement itself, which is paragraph 2, and look at what's being called boilerplate. And it says that the plaintiff is discharging Wells Fargo and its respective corporate parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, independent contractors. And then it goes on and says not Wells Fargo's attorneys, but their attorneys. All that's prefaced by their. The its that you started out that clause with obviously relates to attorneys as well. Right. But they are purporting to release attorneys who represent Wells Fargo, its parents, its subsidiaries, its affiliates, predecessors, and successors. It is clear and unambiguous in my view that there is an intent to release attorneys other than counsel record in this case. If that's not what that means, there are many, many attorneys in the state of Washington and the United States who are in a world of hurt. Well, so let me just get this straight. By saying the plaintiff's release and acquit and forever discharge Wells Fargo and its attorneys, right, you're saying that any lawyer who ever represented Wells Fargo in the history of the company has been released of whatever claims the Strassers might have had. Absolutely. And here's the reason why. And here's the reason why. This comes up every day in practice. If you have a lawsuit and you're releasing the claims in the lawsuit, oftentimes a settlement agreement is worded even broader. We release all persons and entities from any and all claims that relate to this lawsuit, have been asserted, or could have been asserted in this lawsuit. If you're limiting the release to the lawsuit, the release can be as broad as all outdoors, as broad as the universe, and people often do that. And including language from the beginning of time to the present. So, look, I'm not disputing that one could conceive that the language would bear the construction that you want to put on it, and it might even be the proper construction if there had been an overarching view that this was supposed to completely resolve the case. But that was precisely the ambiguity that was submitted to the jury and there was an answer that your clients don't like. I'm sorry, Your Honor, I didn't mean to interrupt. I'm done, and I didn't mean to interrupt you. Go ahead. I think that question is answered right in the agreement. It says in paragraph three of the settlement agreement, in further consideration of the mutual promises contained herein, the strastors shall dismiss with prejudice, not Wells Fargo, the lawsuit. And if you go to the definition of the lawsuit, in paragraph one of the recital, it says, on September 8, 2010, the strastors filed a lawsuit in the United States District Court, Eastern District of Washington, cause number blah, blah, blah, the lawsuit, to recover alleged damages. And so the lawsuit is the whole lawsuit. And so here's what I think the problem is, and here's why I think this makes this a difficult issue, emotionally if not intellectually. I think to get back to Judge Fitzgerald's question about the parole evidence rule in the State of Washington, I think the question initially is, is there an ambiguity in the agreement, looking just at the agreement? And if there is, you can bring in parole evidence rule and look at subsequent conduct and look at negotiations and all sorts of things. But if there is not an ambiguity initially, none of those things can change anything. And I think, Mr. Hall, just so I can educate my two colleagues, I think there is a substantive difference between California and Washington law on this point. As I understand the California parole evidence rule, you can actually use extrinsic evidence in order to establish an ambiguity by proving the context in which the agreement was entered. I don't think you can do that in Washington. I think you first have to find there's an ambiguity within the four corners of the document. Am I correct? You're absolutely correct, Your Honor. That's a cornerstone of Washington parole evidence. I've been struggling with this issue every time I sit on a California parole evidence case, and there is a substantive difference. But let me ask you the tougher question. If you were standing in front of us after a summary judgment had been entered, I'd agree with you, and I'd say we'd better send this back to trial because it's ambiguous. But we've got a bench trial, and we've got findings of fact and conclusions of law which establish that attorneys was limited to Lane Powell. What do we do with that factual finding? Well, I don't think the court should have made that factual finding, and I don't think the evidence supports that factual finding. First of all, the only evidence that was offered on this point by a party to the contract was offered by the plaintiffs who said they didn't read the contract and didn't know what it meant. So there's no real evidence of what took place. The argument is what your honors are troubled by. It is, you know, Mr. Weinstein or his law firm, Weinstein & Reilly, was not dismissed following the settlement. But what happened there was is this agreement was executed, and I think if you knew nothing else. Let me just backtrack one second. I think if you knew nothing else, and you didn't know about the subsequent events, and all you did was look at this agreement, you would conclude that I'm right about what it means. I just think every practitioner in the state believes that's what it means. You're settling once and for all with Wells Fargo. It's in house counsel. It's former counsel. Everybody, you're done. Okay, if that's all you knew, you would say this is clear and unambiguous. But what you do know is that Mr. Weinstein was a defendant in the case, which your honors pointed out, and he wasn't dismissed. But what happened, and you can look at the record, is that this agreement was entered into. And then when the dismissal came around, the plaintiffs wouldn't dismiss Mr. Weinstein. He didn't oppose that. But bear in mind that the other party that's getting dismissed is his client. So he is not going to make trouble. But he had a motion before the court within two months. It's in the record. You can look at the document sheet. He had a motion for summary judgment saying that this dismissed him from the case. And what I think is wrong here, and, you know, it's up to the court, obviously, to do this. But what I think is wrong, the error was in concluding that just looking at the four corners of the document, as Judge Coleman said, that it was ambiguous. I don't think it is. And I think if they made a mistake and they argued, you know, this is a Scrivener's error, we just made a mistake. We didn't mean to release Weinstein or Riley. The thing should have been argued at trial under a different standard, mutual mistake of fact, a whole different set of standards. But what happened was there was no ambiguity. And the court goes forward and there's really no evidence. And now we're going to have a ruling by the Ninth Circuit potentially that this language in a settlement agreement is ambiguous on its face when it's been used by thousands of attorneys and in the State of Washington, the threshold question is looking at nothing else except the four corners of this document, is that ambiguous? It's ambiguous because the co-defendant has not made a party to the agreement. That's the ambiguity. I agree with you. That paragraph 3 is problematic for the plaintiffs. The lawsuit is defined as the entire lawsuit. It's not just limited to their claims against Wells Fargo. But this language that we all have used, I mean, I just have never seen it used to include a co-defendant who's not made a party to the agreement itself. Well, I mean, I hear that observation, Judge Watford, and I think it's absolutely right on. But I think the fact is that there is no requirement that every party in a multi-party lawsuit sign off on a settlement agreement. In fact, I have settled cases. I think everybody has settled cases with multiple parties where some parties will go in and get a release for everybody. I agree. But to me, that's why this is ambiguous. Okay. I understand what you're saying. I mean, it is surprising not to find a signature line for Weinstein and Riley, either as the defendant or as the attorneys for Wells Fargo. Yeah. I understand that argument. I would argue just the opposite, that when the co-defendant is the attorney for the other person who's handling the settlement negotiations and the issue in the case is that the bank didn't get information to their attorney, Weinstein and Riley, and they're stepping up and taking the lead and getting the case settled, that it makes perfect sense for them to settle it and get it done. Mr. Hall, could you just speak for a moment on the other issue with regard to the failure to properly raise the fair debt collection issue? Because it seems to me that everybody was under the assumption that that issue had been resolved, and yet your position now is, no, it wasn't, but there's no indication of that in the pretrial order. What do we do with that? And the order itself was never entered, so I don't even know if that's an operative document in the case. Well, I'm in the interesting position in this case of being retained just for the oral argument, so I wasn't there and I didn't prepare the briefs. But when I read the briefs, and I've read them very carefully and read the excerpts of record that are cited and so forth, it appears to me the argument in the brief is that nothing happened that would preclude the defense requiring the plaintiff to prove that element of the claim. The pretrial order wasn't even entered, and it appears to me there was argument about that at some point, but maybe I'm wrong about that. But I don't believe there's any – nothing happened that would relieve the plaintiff of that burden. I think the question for this Court is was there sufficient evidence from which you could infer that the Weinstein and Riley law firm, instead of just being the law firm for Wells Fargo, was a debt collection agency. That's what I would suggest the issue is. I guess I thought your best argument on this issue had nothing to do with the trial or the Rule 50 motion. It just was – I would think you would just argue that summary judgment was improperly granted on the plaintiff's case because the evidence that they presented to the district court at summary judgment was facially insufficient to satisfy the statutory term debt collector. You could just appeal that from the final judgment. That's sort of how I read the best thing on your argument. We're making that argument, too, Your Honor. I'm not abandoning that argument. Do you want to save some time for rebuttal? Please. Okay. Thank you. Let's hear from your illustrious opposing counsel. Mr. Reynolds. Thank you, Your Honors, and may it please the Court. My name is Seth Reynolds, and I represent Paul and Zadell Strousters. Can you just start with that last question I posed? I didn't really pose a question, but that's to me what's most troubling for your case. Okay. It's that I don't think you presented enough evidence to get summary judgment in your favor on the prima facie case that you had to make out. Right. Thank you. So at summary judgment, under the sell the text rule, the moving party has the initial burden to prove their case. Once the moving party has presented probative evidence of the presence or absence of a fact, the burden then shifts to the other party to rebut that evidence. And your burden here was to show that they, the law firm, regularly engaged in debt collection practices, right? Yes, that is correct. And so as part of that summary judgment, the Strousters submitted a set of interrogatories, along with their assertion that Weinstein and Riley is a debt collector. And these interrogatories demonstrate four points. First, it demonstrated that Weinstein and Riley represented multiple clients in connection with discharge litigation and bankruptcies. So basically- When you say multiple, two? It's unclear from the interrogatories because they object to providing more information. I see two. You're saying, I mean, it's your burden to show that they regularly engage in this practice. Yes, but they have multiple clients, Wells Fargo being one of them. But you didn't move to compel what I thought was kind of sort of the typical carefully drafted reply to the interrogatory question. And so the state of the record is an admission that WNR has made some arrangements with some debtors to settle litigation pursuant to settlement agreements, which had that happened at trial, I believe all three of us would have sustained an objection that the answer was not responsive to the question. But the solution to that is move to compel. We did later move to compel on certain other issues. The defendant, Weinstein and Riley, continued to fail to deliver some of the documents that were requested. We then did a motion for contempt, and the judge did not make any monetary sanctions if they didn't comply. But by the time we got to that point, the summary judgment had already been entered in our favor. And so it became a moot point, and we didn't see the need to continue pressing it because it was no longer at issue whether or not- We have an independent obligation as judges to satisfy ourselves that the plaintiff has put forth sufficient proof to establish a prima facie case. And one of the elements is a debt collector. And the only evidence that was before the court was this ambiguous response, which is not sufficient in my view to establish that element, unless you've got something else that was before Judge Whaley. Yeah, well, some of the other information that was contained within the interrogatories, we know that they had multiple clients for whom they engaged in bankruptcy litigation, that they had sued several debtors throughout the years. We also know that Weinstein and Riley takes a contingent interest in the repayment of the debts that they get just declared non-dischargeable. That's a typical behavior of a debt collector. Additionally, it also establishes that Weinstein and Riley sets up payment plans for repayments of the debts. Again, this is a typical behavior of debt collectors. But where's the evidence of regularly, and how can you quantify that without asking, well, how many times have you done that over the last two years? Right. And doesn't it really require some sense of the overall practice if, in fact, you know, and I guess the circuit hasn't, you know, come down one way or the other, but if there's two views on this, one is just a sheer numerosity, you know, the number of times, and the other one is how many times that is in terms of the practice. Isn't this, the evidence that you've decided is insufficient under either of those? I mean, to show that they were a debt collector. I mean, don't we just need to know more about what it is that they did in order to conclude that they were a debt collector? In terms of your Celotex example, what I see it is that the question is whether you get to the point where it would be switched to the other side to do anything. I mean, okay, they didn't do anything, but, you know, as Judge Hummel just said under Rule 56E, they don't have to, you know, I mean, look, okay, they should have done something, but if they didn't, the burden is still there to determine whether judgment is appropriate as a matter of law, and that's the question that we're wrestling with here, because we just don't know very much about the defendant, and so it's very hard to say as a matter of law in the absence of knowing more. So, you know, what else is there in the record, which you know a lot better than I do, that could be used to say that that burden was met on summary judgment? Well, additionally, there's also the billing statements that were sent out. The billing statements show that there was a system set in place to regularly generate these things. So, you know, if the defendants had made an objection to the characterization in the summary judgment of them being a debt collector and the court had decided to weigh it on the issues rather than their failure to respond to an asserted fact, I think both the Strousters and Weinstein and O'Reilly agreed that the proper standard to use would be the Goldstein standard, because it has a more holistic view towards what constitutes a debt collector. And the key factors which they illuminate in Goldstein as the most important factors in determining whether or not an entity is a debt collector is whether the entity has personnel specifically assigned to work on debt collection activity, whether the entity has systems or contractors in place to facilitate such activity, and whether the activity is undertaken in connection with ongoing client relationships. What was the last one again? The last element was what? Whether the activity is undertaken in connection with ongoing client relationships. All right. So the evidence presented shows that they undertake this activity with regards to an ongoing client relationship. It also demonstrates that they had systems and personnel set up to deal with the debt collection. In the fact that they had a policy, we take a contingent interest and we set up repayment plans, and they had personnel to generate the statements that they sent out every month. And so because of those factors, we do meet the Goldstein test. So even though the Ninth Circuit has generally used a percentage or numerosity type test, I think that the Goldstein test is a better test because it gives a more holistic and realistic view of how debt collectors behave. I mean you deposed Mr. Weinstein and he testified at the trial. Why didn't you just ask him? We did at trial. How much of this do you do? Now, if you look at Mr. Weinstein's testimony, there's little question whether the evidence that was presented at trial demonstrates that. We have much more evidence that was presented at trial than at summary judgment. However, the issue was no longer active at trial, so it wasn't directly addressed. But if you look at the record, I think it becomes clear because he talks about undertaking this work for the past 25 years. That's a long time. So you're talking about his deposition testimony or the testimony that was submitted in support of summary judgment? Summary judgment. This has nothing to do with the summary judgment. This is what happened at the trial. I know, but what was before the district court on summary judgment? Did the district court have Mr. Weinstein's deposition testimony? No. No. So all the district court had on summary judgment was that incomplete answer to interrogatory number 10? Well, interrogatory number 4, 10, and 11. That's it? Yes, that's correct. Okay. All right. Well, with regards to the issue of the settlement contract, I think in addition to the points that Your Honors have made, the very fact that the parties attempted to define attorneys within the contract itself shows that there is not ambiguity in the contract as to whether or not Weinstein and Riley was met. Well, why did Paragraph 3 say that the entire lawsuit was going to be dismissed as a result of that settlement agreement? Well, there is another clause which says specifically that, let's see, what does it say exactly? Okay. The contract required the Strousters to miss all of the Strousters' claim against Wells Fargo. So there are different. Well, I mean, the paragraph that governs what's going to happen is Paragraph 3, and it says dismissal. Yes. And it says in further consideration of blah, blah, blah, the Strousters shall dismiss with prejudice the lawsuit. No qualification, no limitation. And as counsel pointed out, the definition of the lawsuit, that capitalized term in Paragraph 1 of the recitals is just the action in its entirety. I understand the argument, but the fact that there is a contradicting clause also in the contract at best creates ambiguity, which then allows the court to determine intent, which the court did and found that the intent was not to release Weinstein and Riley. And was that argument made, was the argument made to the district court that's been made here very crisply, which is that Paragraph 3, the lawsuit will be dismissed with prejudice and the lawsuit is then a defined term? Did the district court anywhere in the record grapple with that precise argument? That was an argument that was raised, yes. And in regard to summary judgment or during the trial, or where in the record was that precise argument made to the district court? It was made a couple of times. It was made twice in summary judgment and it was rejected, and then it was also made in front of, during the trial, and it was rejected again then. And what was the district court's basis for finding the ambiguity in light of that language? I assume that it was the fact that there was a contradictory term, which specified that it was, the Strassers were going to dismiss the claim against Wells Fargo, where it is more specific at one point than it is at the other point. And furthermore, whether or not Weinstein and Riley could be envisioned in this contract, by itself requires the use of extrinsic evidence, because there is no evidence within the contract itself that Weinstein and Riley are attorneys for Wells Fargo. According to the plain face of the contract, the only evidence of anyone who is an attorney for Wells Fargo is David Voyles. So the only way to even imagine that Weinstein and Riley could be meant is to look to extrinsic evidence. And finally, Well, that would be true, though, of every single in-house lawyer for Wells Fargo, even though clearly they are being released as well. There's no indication in the four corners of the agreement who those people are. Or everyone else who's being released. I mean, the predecessors, successors, you know, the whole litany that's of everyone who's being released, everyone would then would have to, would have, there would be that same argument. That's true. And there's no reference to the law firm Lane Powell. Yes, it's specifically to David Voyles, who was the attorney at Lane Powell, who was assigned to I know that, but I can't tell that by reading the settlement agreement. That Lane, that David Voyles was employed by Lane Powell. Right. Yes, you're right. There's no statement in the settlement agreement. But you would agree that Lane Powell was dismissed or any claims that might be had against Lane Powell because Mr. Voyles was dismissed, right? I don't think that any extra claims would be dismissed that are not related to this lawsuit. But yes, generally, I would agree with that. Well, I mean, the problem is once you start down that slope that we're dismissing claims against Wells Fargo and its attorneys. Well, Lane Powell's not mentioned, although, and Mr. Voyles didn't even sign this as lawyer for Wells Fargo, which is kind of unusual. Usually the lawyers sign along with the clients, don't they? Yeah. So what do we do with the ambiguity? Isn't the district court entitled to consider? Oh, I think that the district court did make the right ruling on this issue. But also, one other point I would like to make is that as part of this lawsuit, we were not suing Weinstein and Riley in their aspect as a – I see my time is up. May I continue? Yeah, go ahead. We were not suing them in their capacity as lawyers for Wells Fargo. We were suing them in their capacity as debt collectors. And so the intent was not viewing them as attorneys. In our minds, Weinstein and Riley were defined as debt collectors, not attorneys. Okay. Thank you very much. Mr. Hall, I'll give you a minute on rebuttal. I'll be very brief, Your Honor. I just would reiterate what the court was asking. And if you have a summary judgment motion, there is no proof adequate to meet the standard to prove there's a debt collector. That shapes the whole trial and none of that – the subsequently evidence that came in at trial was not available in summary judgment. I would argue it's not sufficient anyway. But you basically had the whole trial shaped by the fact that based on two – at most two representation matters of collecting debts, it characterized the Weinstein and Riley firm as a debt collector. And all the evidence said they did some work for banks, they counseled banks, but there just wasn't adequate evidence to meet the Goldstein test even. And so I think that's exactly right. Thank you both. The case just argued is submitted.
judges: Fitzgerald, Tallman, Watford